LUCRETIA TRAVIS *v.* A. J. WILLIS ET AL.

1. MARRIED WOMAN. *Liability for ante-nuptial debts.*
   A woman owing debts as a *feme sole*, but having no property in her own right, is not by marriage, *ipso facto*, absolved from her ante-nuptial debts, but she continues liable for them after as before marriage.

2. SAME. *Suits against. Declaration and judgment.*
   The contracts of a married woman are, *prima facie*, void by reason of her coverture, and when she is sued upon a contract, her liability must be made to appear; but if the declaration shows that the contract was made when she was a widow, or *dum sola*, her coverture at the time of the suit is no obstacle to the recovery of such judgment against her as might be rendered against any other defendant.

3. SAME. *Can confess judgment.*
   A married woman may confess a judgment for a valid ante-nuptial debt, and such judgment will be conclusive and enforceable against her, as if rendered by default or upon a verdict.

4. SAME. *Her admissions competent evidence.*
   At common law the admissions of the wife were not competent evidence in a suit against her husband and herself jointly, because the effect would have been to fix a liability on the husband; but since our statute has relieved the husband from all obligation to pay the ante-nuptial debts of his wife, her admissions *in pais* are competent evidence against herself.

5. HUSBAND AND WIFE. *Husband a nominal defendant.*
   In suits against husband and wife jointly, for her separate liability, he is, under section 1783 of the Code of 1871, merely a nominal or formal party, being made a defendant only for the reason that he may assist his wife in the protection of her interests.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

Lucretia Travis, the plaintiff in error, was the widow of B. T. E. Mabry, in 1862, and, being indebted to R. H. Brumby, gave her note for the amount of the debt. In 1863 she married her present husband, W. W. Travis. Mrs. Travis, having been sued on her note to Brumby, appeared in open court on November 5, 1866, waived the issuance and service of a summons, and with the consent of her husband, who was also a defendant, confessed a judgment in favor of the plaintiff for the amount of the note sued on, with interest, to be levied of her goods, chattels, lands, and tenements. The lands of Mrs. Travis were levied on under this judgment, and sold on December 13, 1866. In March, 1877, the plaintiff in error brought this action to recover in ejectment the lands sold under said judgment. The defendants in error claimed title through the purchaser at that sale. It was agreed between the parties that the right of the plaintiff to recover in ejectment was dependent upon the validity of the judgment under which the sale was made.

*Nugent & McWillie*, for the plaintiff in error.

1. A *feme covert* at common law could, in general, do no act to bind herself. She could make no contract, and might avail herself of her coverture to defeat a contract, even though she have been guilty of fraud. *Keen* v. *Coleman*, 39 Penn. 299. Her disability — greater than that of an infant — resulted from the matrimonial relation. *Martin* v. *Durlby*, 6 Wend. 9, 13. She could not state an account of a debt contracted before marriage, and her promise after marriage to pay such debt would be absolutely void. *Morris* v. *Norfolk*, 1 Taun. 212. The High Court of Errors and Appeals said that a married woman has no power whatever to bind herself by contract, and that her separate property could only be reached in equity. *Davis* v. *Foy*, 7 Smed. & M. 64. Hence the chancery courts took the jurisdiction to entertain suits against *femes covert*, in order to subject their separate estate to the

payment of a class of debts; the proceeding was *in rem*, to enforce a *quasi*-lien.

The statute goes no further than to enact that the separate property of married women shall be liable for debts contracted before marriage. It does not give to the courts of law capacity to entertain a suit for the recovery of such debts against married women. There was no use for that. The property was bound, notwithstanding the marriage, and the equity courts were open for relief. Code 1859, art. 25, p. 336. It is true, the succeeding section declares that she may be sued, jointly with her husband, on all contracts or other matter for which her individual property is liable, but it would hardly include a case in which the attempt was made to reach her property for an ante-nuptial debt. There the remedy was in equity. 46 Miss. 630.

2. The declaration in this case alleges that, while *sole*, Mrs. Travis executed the two promissory notes copied into it, but does not allege that she owned any lands or property at the time of suit brought. That this averment was indispensable has been repeatedly decided. *Pollen* v. *James*, 45 Miss. 132; *Whitworth* v. *Carter*, 43 Miss. 61; *Hardin* v. *Phelan*, 41 Miss. 112; *Choppin* v. *Harmon*, 46 Miss. 306; *Bank* v. *Williams*, 46 Miss. 627. As said in *Carey* v. *Dixon*, 51 Miss. 595, "If the court awards judgment against a married woman in a case not authorized by law, such judgment will be a nullity, and must be treated as. such." See *Griffin* v. *Hagan*, 52 Miss. 80.

3. The mere fact that the debt was contracted during widowhood does not alter the principles announced in the cases cited. At common law this debt, upon the marriage, became the debt of the husband, and the wife could not be sued for it. The non-liability of the husband, under our statute, is made to depend upon the fact of the wife's holding separate property. The wife's liability is not a personal liability; if she had separate property when she married, and retains it when suit is brought, that property may be subjected to the payment of the

debt, by proper proceeding in chancery. She cannot be sued at law while the coverture continues. *Beard* v. *Webb*, 2 Bos. & Pul. 93 ; *Marshal* v. *Rutter*, 8 Term Rep. 545. In this case there is a personal judgment by confession in open court, and if valid at all, the creditor may follow the married woman all the days of her life, taking, not only the property which she may have held at the time of her marriage, but any which she may have acquired since.

4. The confession of judgment is a contract not at all allowed by statute, nor warranted by the common law. *Caldwell* v. *Walters*, 18 Pa. St. 79 ; *Brittain* v. *Wilder*, 6 Hill, 242 ; *Watkins* v. *Abrahams*, 24 N. Y. 72 ; *Stevens* v. *Dabany*, Minor, 379 ; *Patton* v. *Stewart*, 19 Ind. 233 ; *Sellars* v. *Kelly*, 45 Miss. 323 ; *Handy* v. *Cobb*, 44 Miss. 700 ; *Canby* v. *Hendricks*, 8 Blackf. 189 ; *Work* v. *Doyle*, 3 Ind. 436.

*T. J. & F. A. R. Wharton*, for the defendants in error.

If the judgment against Mrs. Travis, under which the lands in controversy were sold, was valid, the judgment in this case must be affirmed. We submit that the judgment was valid against Mrs. Travis and against the lands, as it was rendered upon a debt contracted by her *dum sola*, and was confessed by her in open court, with the assent of her husband, also given in open court. This question does not appear ever to have been decided by this court, or the late High Court of Errors and Appeals of this state, although the cases are numerous in which judgments rendered against married women under our statutes have been affirmed as valid ; and we submit that the decision of this question should be governed by the rules established by our statutes, rather than by the common-law rules.

Article 25, page 336, of the Code of 1857, among other things, provides that the separate property of any married woman " shall be liable for debts contracted by her before marriage ; and the husband shall not be liable for debts contracted by the wife before marriage," etc. ; and article 258, on page 523 of the same Code, provides that " any person

indebted to another in any sum of money within the jurisdiction of the Circuit Courts of this state, on any promise, agreement, or covenant, may sign an office-confession of judgment in the clerk's office," etc. ; and article 259, on same page of this Code, provides that at the next term the court shall render judgment thereon, which " shall be as binding and obligatory as judgments rendered in any other form." Article 185, page 509 of the same Code, provides that a judgment on confession shall be equal to a release of errors ; and article 9, page 563, provides that " no writ of error shall be granted on a judgment by confession."

These are the only provisions of our statutes which we consider necessary to be considered in the adjudication of this case, as the debts upon which this judgment was confessed were contracted on October 13, 1862, and the judgment was confessed on November 1, 1866. We think the language, "Any person indebted to another," etc., used in article 258, on page 523 of the Code of 1857, is sufficiently broad and comprehensive to embrace a married woman, when confessing a judgment with the assent of her husband.

Surely a judgment rendered in the solemn form as the one under consideration should be regarded as valid as would be a judgment by default against a married woman — as a judgment by default, *ex necessitate rei*, must be regarded as in the nature of a judgment by confession. As our statutes authorize suits at common law against a married woman and her husband, and there is no power in the court to compel her to plead to such suits, it must follow that a valid judgment by default, etc., can be entered against ; or, otherwise, the creditor could not enforce a just demand against her so long as she should refuse to plead to his suit. Again, a married woman, jointly with her husband, may submit to arbitration a matter which may result in depriving her of her real estate. *Memphis & Charleston R. R. Co.* v. *Scruggs*, 50 Miss. 284 ; 2 Bishop's Mar. Wom., sec. 381.

" Judicial proceedings conducted and entered of record in

due form bind the parties to them, whether those parties are capable of binding themselves out of court or not. * * * 'Married women,' said Ruffin, J., sitting in the North Carolina court, 'are bound by judgments at law as much as other persons, with the single exception of judgments allowed by the fraud of the husband in combination with another.' '' 2 Bishop's Mar. Wom., sec. 386.

In *Cannon* et al. v. *Grantham*, 45 Miss. 88, the court say that, as to ante-nuptial debts, the wife's liability continues during the coverture to the extent that she was liable at the time of her marriage ; and whilst no judgment can be rendered against him on such debts, the husband ought to be joined in a suit against the wife on such debt, for conformity, etc.

*Gillespie & North*, on the same side.

SIMRALL, C. J., delivered the opinion of the court.

The married woman's law is enabling, partially emancipating the wife from the disabilities of coverture. The statute confers *legal* rights, and in general terms defines her dominion over her property and her capacity to subject it to her contracts. She may sue and be sued, jointly with her husband or separately, on all contracts or other matters for which her individual property is liable. Code, sec. 1783.

After defining the capacity of a married woman to contract during coverture, and thereby make liable her property owned at the time of the marriage and subsequently acquired, the statute, in brief but comprehensive words, deals with her ante-nuptial contracts in section 1480, to wit : '' And her separate property shall be liable for debts contracted by her before marriage.''\ '' The husband shall not be liable for debts contracted by the wife before marriage ; nor shall he be liable for debts contracted by her after marriage, if she hold separate property, under this chapter.'' In *Cannon* v. *Gratham*, 45 Miss. 92, the precise point adjudged was that there was. no liability under the statute on the husband for debts contracted by the wife before marriage. The counsel for the creditor ear-

nestly urged the argument that the husband was left by the statute under the common-law liability, " *where the wife had no separate property.*" It appears from the report of the case that the husband was sued alone, and it was ruled that she was (if the husband's responsibility was as at common law) the meritorious debtor, and must be sued jointly with the husband. Whether the action be *ex contractu* or *ex delicto*, both must be joined, and if the judgment were against the husband alone, it would be error and ground of reversal. *Cole* v. *Seely*, 25 Vt. 220 ; *Gage* v. *Reed*, 15 Johns. 403. It is not technically a case of joint liability, but a limited obligation which the common law imposed on the husband as incident to the marriage ; hence, if the husband dies before judgment, the suit would survive against the widow, but the liability of the husband would be absolutely extinguished ; nor would his estate in the hands of a personal representative be affected. *Cureton* v. *Moore*, 2 Jones Eq. 204. But if the wife dies, the suit abates, because there is no longer *in esse* the real debtor. 1 Chitty's Pl. 59. Although the wife may have brought to the husband a fortune, if he has reduced it to possession and then dies, it furnishes no reason to pursue his estate for an ante-nuptial debt. But if he becomes the wife's administrator, and as *such* reduces to possession assets that were hers, to that extent the claim is good against him as her representative. *Jones* v. *Walkey*, 5 Sneed, 135 ; *Heard* v. *Standford*, 3 Wms. 409 ; *Waul* v. *Kirkman*, 13 Smed. & M. 599. If, during coverture, the husband makes an *express promise* on a *fresh consideration* to pay the wife's ante-nuptial debt, recovery may be had after the wife's death. *Waul* v. *Kirkman, supra; Beach* v. *Lee*, 2 Dall. 257. The common law laid upon the husband this liability for the wife's ante-nuptial debts, not because he got property by the marriage, for whether she brought him property or not, it arose. It probably sprang out of the intimate relation which marriage created, making husband and wife one person, and not allowing her to be sued alone. 2 Bishop's Mar. Wom., sec. 312.

The statute abolished altogether this limited responsibility of the husband. But it left the wife liable as at common law. If it had been altogether silent on the subject, that would have been the result. The clause declaring "that her separate property shall be liable for debts contracted by her before marriage," announces what would have been true without such declaration. The clause was properly inserted to prevent the conclusion that property held under the statute should be liable to these debts, as well as those which she is enabled under the statute to incur. It does not convey the idea pressed by counsel : that if she has no property in her own right, the marriage, *ipso facto*, absolved her from ante-nuptial debts.

Mrs. Travis continued liable after her second marriage to the same extent she was when she contracted the debt during her widowhood. She was subject to suit, judgment, and final process. The cause of action preferred against her appearing by the pleading to have been contracted "*dum sola*," her coverture at the time of suit and judgment interposed no hinderance or obstruction to a recovery.

The real point of disputation is the alleged incapacity of a married woman to confess a judgment.

The record must furnish evidence of the legal liability of a married woman. Her coverture, *prima facie*, makes void her contracts ; therefore, it must appear that, in the particular case, liability is disclosed. If the declaration shows that the notes were executed by Mrs. Lewis during her widowhood, a judgment against her for want of a plea, or by withdrawal of a plea, would be good. That would be the sentence of the law, on the state of the record. If, instead of silence, she appears in open court and admits the facts to be true, and consents that judgment may be entered against her, the judgment is by virtue of the consent and confession. If the case presented as a cause of action in law imposes no liability because of coverture, the confession of judgment would not be binding on her. That would follow by virtue of section 1783 of

the Code, which forbids a judgment against her, "unless the liability of her separate property be first established;" and, also, from the principles announced in *Griffin* v. *Bagan & Dickey*, 52 Miss. 80, 81.

At the common law, when the effect of the wife's admission was to impose a liability on the husband, she could not bind him. But when the statute has exonerated the husband from responsibility on the wife's ante-nuptial contracts, no solid reason is perceived why she may not allow judgment by *nil dicit*, or confession, especially with the consent and concurrence of the husband. . Not that she can confess judgment for a debt which is not in law valid, and give the judgment force and conclusiveness by virtue of the confession, but because, if the cause of action to which the confession applies imports a legal obligation, the confession is but a consent that the judgment may be pronounced on the cause of action.

We have been referred to several cases holding that the wife cannot give a warrant of attorney to confess judgment, and that she cannot make admissions competent as evidence in a joint suit against her husband and herself. Such is the rule where the admissions or confessions would affect the husband's interests. *Brown and Wife* v. *Lasalle*, 6 Ind. 147, and cases there cited. The rule at common law is as broad as contended for by counsel. But the rule has its foundation in the principles of that system respecting the relations of husband and wife, and the effect of marriage on the rights of the husband in the wife's property.

The statute here relieves the husband from the obligation to pay ante-nuptial debts. He stands in relation to them as a stranger. Her confession or admission in nowise affects his rights. Recovery may be had against her, and it matters not whether it be by verdict and judgment, or by default or confession. Her admissions *in pais* are competent evidence against her, because in no event can judgment be had against the husband.

We lately held that the wife was liable in *assumpsit* for

counsel fees incurred in defending a suit which affected her real estate held under the statute. We were referred to cases denying her liability for such fees in divorce suits. The distinction was pointed out that in the former case she could sue or be sued as respects her separate estate, and by implication from the statute she must have the capacity of any other suitor to make her suit or defense available, by employment of counsel. In the other class of cases her incapacity at common law was not relieved.

The married woman's law, in so far as it confers legal capacity, enables her to act as a *feme sole*.

As to the form of the suit, being joint and several, it is manifest, from section 1783 of the Code, that the husband is a mere formal or nominal party ; for, "if the husband be returned not found, the suit may be prosecuted against the wife alone." She is the real defendant, and, for the purposes of that suit, is proceeded against as if she were a *feme sole*. She may select an attorney, and defend by him. She is before the court, with the rights and privileges of any other suitor. And the court pronounces judgment according to the record which she makes, subject to this limitation : that her coverture is a valid reason in law why judgment should not go against her, and the special case to the contrary must be disclosed on the record.

Here it did so appear. The notes were made when Mrs. Travis was unmarried. The husband, who is made a party defendant for no other reason than to assist, with his advice, in the protection of her interest, consented with her that judgment should be pronounced.

We are of opinion that the judgment against Mrs. Travis is valid, and affirm the judgment.